IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ASSOCIATIONVOICE, Inc., a Colorado corporation,

        Plaintiff,

   vs.

ATHOMENET, INC., a Georgia corporation,
JEFFREY T. SANDERS, an individual,
SUSAN D. SANDERS, an individual, and
IMARI ADAMS, an individual,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff AssociationVoice, Inc. ("AV"), through its undersigned counsel, states the following for its Complaint And Jury Demand against defendants AtHomeNet, Inc., Jeffrey T. Sanders, Susan D. Sanders, and Imari Adams (respectively "AHN", "J. Sanders", "S. Sanders" and "Adams" and collectively the "AHN Defendants").

### STATEMENT OF THE CASE

1.    AV is a Denver-based company. AV is engaged in the business of providing homeowners associations and management companies (collectively "HOAs") with a Web-based software solution that is designed to facilitate communications between HOAs and their constituent members and to help HOAs efficiently manage the functions they perform on behalf of their members.

2.    Over the last nine years, AV has spent a substantial amount of money and thousands of hours developing, testing, and implementing AV's Web-based software solution.

As a result of that intensive effort, AV has been able to develop many unique features that have differentiated AV's solution form the solutions offered by AV's competitors, that have given AV a competitive advantage vis-à-vis its competitors, and that have made AV's Web-based software solution a success in the marketplace.

3.    AHN is a Georgia-based company.  AHN offers a Web-based software solution that competes directly with AV's solution.  Historically, AHN's solution has offered fewer features and functional capabilities than AV's solution.  This "features gap" has been one of the key differentiators between the AHN and AV software in the marketplace and has put AHN at a competitive disadvantage.

4.    As indicated above, the development, testing and implementation of the numerous features that are unique to AV's Web-based software solution has been time-consuming and expensive.  But, that effort has been productive, attracting an ever-increasing number of clients to AV instead of its competitors, including AHN.  In response, and instead of spending the significant sums of money, and the significant amount of time, necessary to develop lawfully the missing features and functionality developed by AV and to thereby lawfully bridge the "features gap," the AHN Defendants devised a scheme to steal those features from AV.

5.    This scheme was created and has been implemented by J. Sanders, S. Sanders and Adams, all of whom are directors, officers, owners and/or employees of AHN, in the course and scope of their employment by AHN.

6.    The first step in the AHN Defendants' illegal scheme was to create a fictitious HOA called "Landings East HOA" (hereafter "Landings East").  The AHN Defendants created Landings East because they knew that, if they revealed to AV their affiliation with AHN,

they would not be able to obtain access to AV's confidential proprietary software, including online password-protected Web pages available only to AV's *bona fide* customers.

7.     The second step in the AHN Defendants' illegal scheme was to have Adams assume a false identity and pretend to be an officer of the fictitious Landings East and to fraudulently induce AV to accept Landings East as a customer.  Through this ruse the AHN Defendants obtained access to AV's software, and to confidential proprietary information concerning AV's software, pricing and business operations, which AHN knew could only properly and lawfully be accessed by AV's *bona fide* customers who signed a binding confidentiality agreement with AV.

8.     The third step in the AHN Defendants' illegal scheme involved using the fraudulently obtained access to AV's software to systematically reverse engineer that software and "scrape" protected content from AV's password-controlled Web pages.

9.     Then, in the final step of their illegal scheme, the AHN Defendants used the confidential proprietary information they had fraudulently obtained from AV to copy features that had been available to HOAs only as part of the AV solution and to add those features to the AHN solution, thereby seeking to close (at least in part) the "features gap" between AHN's software solution and AV's software solution.

10.     Having recently discovered AHN's fraudulent scheme as described above, AV brings this action to enjoin the AHN Defendants from continuing to pursue that illegal scheme, to enjoin the AHN Defendants from their continued unlawful exploitation of AV's intellectual property, to require the AHN Defendants to disgorge all AV intellectual property they have obtained through the use of their illegal scheme, to require the AHN Defendants to remove from AHN's software solution all enhancements obtained through the use of their illegal scheme,

to require AHN to inform its customers that the software solution AHN has provided includes pirated features and identifying those pirated features, to compel AHN immediately to replace its software solution with a solution not having pirated features, and to obtain compensation for the losses and damages AV has suffered and the gains fraudulently realized by the AHN Defendants through their implementation of the illegal and fraudulent scheme described in this Complaint.

## PARTIES, JURISDICTION AND VENUE

11.   AV is a corporation formed under the laws of the State of Colorado with its principal place of business in Denver, Colorado, and is a citizen of the State of Colorado for purposes of diversity jurisdiction under 28 U.S.C. §1332.

12.   AHN is a corporation formed under the laws of the State of Georgia with its principal place of business in Suwanee, Georgia, and is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

13.   J. Sanders is one of the owners and directors of AHN.  J. Sanders is also AHN's CEO and President.  J. Sanders is a resident of the State of Georgia and is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

14.   S. Sanders is one of the owners and directors of AHN.  S. Sanders is also AHN's CFO and Vice President. S. Sanders is a resident of the State of Georgia and is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

15.   Adams is an employee of AHN.  Adams is a resident of the State of Georgia and is a citizen of the State of Georgia for purposes of diversity jurisdiction under 28 U.S.C. §1332.

16. Jurisdiction over this action is proper pursuant to 28 U.S.C. §1331 because at least one of the claims asserted in this action arises under a federal statute; pursuant to 28 U.S.C. §1332 because the state law claims in this action are between citizens of different states and the matter in controversy is reasonably believed to exceed $75,000, exclusive of interest and costs; and pursuant to 28 U.S.C. §1338 because this action involves claims under the United States Copyright Act.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and because the intellectual property owned by AV that is the subject of this case is located in this District.

FACTUAL ALLEGATIONS

18. AV was founded in 2000 and is in the business of providing a Web-based "software as a service" solution to HOAs throughout the country. AV competes with other "software as a service" companies for the business of HOAs, including other software companies that, like AHN, also offer Web-based software solutions to HOAs.

19. Through the expenditure of a substantial amount of time and money, AV has developed a proprietary Web-based software solution that includes numerous unique features and functionalities. Those unique features and functionalities have differentiated AV's software solution from competing solutions and have given AV a competitive advantage.

20. Through the expenditure of a substantial amount of time and money in support of its marketing efforts, AV has been able to inform HOAs about its Web-based software solution, has been able to inform HOAs about the unique features and functionalities differentiat-

ing AV's web-based software solution from competitive solutions, and has been able to sell its Web-based software solution to HOAs located throughout the United States and has also soled its solution internationally.

21.    The unique features and functionalities of AV's web-based software solution have played a prominent role in AV's marketing efforts and an important role in enabling AV to sell its software solution to various HOAs, as opposed to the competing software solutions offered by AV's competitors. The solutions offered by AV's competitors lacks the unique features and functionalities of AV's solution.

22.    Because of the significant value associated with its Web-based software solution, AV protects its interest in that intellectual property in various ways, including under the United States Copyright Act. AV also requires its customers to execute a detailed Web Hosting and Services Agreement as a condition of accessing AV's software (the "Services Agreement").

23.    The Services Agreement contains provisions specifically intended to protect AV's proprietary software and underlying intellectual property rights. These protections include Section 4 of the Services Agreement, which limits the use of AV's services to the contract counterparty (denominated the "Subscriber") and the counterparty's "authorized users or agents."

24.    These protections also include Section 7 of the Services Agreement, in which the Subscriber agrees:

> — to provide AV with "true, accurate and complete information about itself and other users" of AV's services;
>
> — to maintain the confidentiality of AV's "proprietary and confidential information and materials" including, without limitation, all proprietary "information relating to [AV's] business and marketing plans and

processes, rates, fees and other terms of pricing […] customers, software, hardware and technology, or quality of performance"; and

— not to "use or disclose, or permit any other person or entity under its control to use or disclose, Confidential Information" except in circumstances not applicable in this case.

25.  These protections also include Section 8 of the Services Agreement, in which the Subscriber acknowledges that:

— AV owns the content of the Services provided (other than content provided by third-parties), including the software, files, processes, systems and databases provided by AV;

— AV owns other tangible and intangible personal property relating to the Services, including the copyrights, inventions, trade secrets, know-how and other intellectual property rights relating to the Services;

— it [the Subscriber] will not, and will not permit any other person or entity to, "copy, revise, alter, modify, decompile, reverse engineer, [or] assemble" any of AV's intellectual property, including without limitation any "object code, source code, underlying processes or algorithms" constituting part of AV's intellectual property.

26.  Additionally, Sections 2 and 8 of the Services Agreement entitle AV to collect all costs and expenses of enforcing its rights and remedies thereunder, or enforcing any of the terms and conditions of the Services Agreement, including attorney's fees.

27.  As described above, AV has recently learned that, beginning sometime in 2007, J. Sanders, S. Sanders and Adams devised and thereafter implemented a scheme to obtain access to, and to then use, AV's confidential proprietary information through the use of unlawful and fraudulent means.

28.  More particularly, in November 2007 Adams contacted AV and falsely represented that he was named "Angelo Mahdi".  That false name is virtually identical to "Angela Mahdi", the name of Adams' wife.

29.     Adams also falsely represented that he was the President of a HOA located in Georgia known as the Landings East HOA.  Upon information and belief, there is not now, nor has there ever been, any HOA registered with the Georgia Secretary of State under the name Landings East HOA.  Thus, the Landings East HOA (which, as noted above, is generally referred to herein as "Landings East") is an invention of the AHN Defendants — a fictitious entity the AHN Defendants created and used to deceive AV and to facilitate their unlawful pirating of AV's confidential proprietary information.

30.     Adams also represented that the fictitious Landings East was interested in becoming a customer of AV.  On or about December 18, 2007 and in response to Adams' fraudulent representations, AV sent Adams a Services Agreement and Adams signed the Services Agreement under the name "Angelo Mahdi" and in Adams' purported capacity as the President of Landings East HOA.  A copy of the signed Services Agreement is attached as Exhibit A and incorporated herein by this reference.

31.     The address written on the Services Agreement by Adams as the address for "Angelo Mahdi" is 5111 Manitou Way, Stone Mountain, GA 30087.  Upon information and belief, this address is the address of Angela Mahdi, Adams' wife.

32.     The fax number written on the Services Agreement by Adams is 770-465-5101.  In returning the signed Services Agreement, however, Adams did not use that fax number.  Instead, as shown on Exhibit A, the fax header appearing on the signed Services Agreement returned by Adams shows that he faxed the signed Services Agreement from a fax with the number 404-381-4897, which number is shown as belonging to Angela Mahdi, Adams' wife.

33.    The phone number handwritten into the Services Agreement by Adams is 404-574-2400.  Calls to AV by Adams show the caller ID for that number as Angela Mahdi, the name of Adams' wife.

34.    In order to further conceal the fraud that they were perpetrating, and the fact that Landings East was a fictitious entity, the AHN Defendants paid the fees due AV by money orders or cashier's checks.

35.    After J. Sanders, S. Sanders and Adams had implemented the first steps of their illegal scheme, which involved fraudulently inducing AV to enter into a Services Agreement with a fictitious HOA, which would give AHN access to AV's intellectual property, J. Sanders, S. Sanders, Adams and others at AHN embarked on the next step of that scheme, which was to use their illegally obtained access to replicate the unique features of the AV software by the reverse engineering of that software, thus causing AV's intellectual property, including its source code and know-how, to be copied.

36.    Among other things, this aspect of the scheme involved the AHN Defendants' systematic accessing of AV's password-protected Web site, which access was available only to *bona fide* customers, to reverse engineer AV's software solution; frequent e-mails and calls to AV's Support Department to gain further information; and multiple inquiries and requests to AV's Sales Department, all for the purpose of enabling AHN to copy the unique features and functionalities of AV's software solution.  Through this process the AHN Defendants were able to determine the specific functionality, processes, procedures, concepts, best practices and know-how used to create and to enable the differentiating features and functionalities of the

AV software, and how AV's software is marketed and sold to capitalize on those unique and differentiating features and functionality.

37.    Upon information and belief, the AHN Defendants have used at least 14 different AHN computers (and, by inference, at least 14 different AHN employees) to perpetrate their scheme.  Upon information and belief, the AHN Defendants have illegally accessed AV's software on more than 300 separate occasions.

38.    The use of so many different AHN computers and the number of different instances on which AHN's computers have illegally accessed AV's software solution confirms that the scheme at issue was not one that was limited solely to J. Sanders, S. Sanders and Adams, but was instead a scheme involving almost half of AHN's reported 35 employees.  The extent to which this scheme was embedded in AHN's organizational structure, and the resources devoted to this scheme by AHN, also confirm the importance placed by AHN on the need to bridge the "features gap" between its software solution and AV's software solution, and the significant competitive importance and competitive advantage of the features that were unique to AV's software.

39.    Upon information and belief, the AHN Defendants have not only systematically reverse engineered AV's software through the fraudulent scheme described above, but they have regularly re-accessed AV's software to determine whether new features have been added by AV and they have engaged in targeted re-accessing of AV's software in response to AV's announcements of new features and capabilities — again, for the purpose of reverse engineering those new features and capabilities.

40.     Additionally, as part of their scheme the AHN Defendants have questioned AV personnel about features that AV does not currently offer in order to enable AHN to target its own development efforts at adding such features to its competitive software solution.

41.     After employing their illegal scheme to steal the proprietary software architecture, features and functionality developed at great time and expense by AV, and after using that scheme to copy AV's intellectual property, including its source code and know-how, the AHN Defendants then embarked on the final step of their illegal scheme, whereby the AHN Defendants used the confidential proprietary information they had fraudulently obtained from AV to copy features and functionality theretofore only available on the AV solution and to add those features and that functionality to the AHN solution, thereby enabling AHN to avoid incurring the substantial investment of expense and time necessary to develop the features unique to AV's solution.  In essence, then, by stealing features from AV the AHN Defendants have been able to avoid substantial development costs and have been able, by deception and fraud, to accomplish what they have been unable to accomplish by lawful and fair competition, which is to close (at least in part) the "features gap" between AHN's Web-based software solution and AV's Web-based software solution.

42.     Upon information and belief, the features identified to date that the AHN Defendants have improperly added to AHN's competitive solution through their illegal scheme include at a minimum the following:

> — features from AV's Messenger Service function, including adding the ability to print mailing labels for the entire distribution list as well as for only those HOA members who did not receive the correspondence by e-mail; the ability for a Site Administrator to "unsubscribe" residents from e-mail distribution groups; a "My Subscriptions" functionality allowing Members to see at-a-glance all of their correspondence

subscriptions and to subscribe/unsubscribe from this page; the ability to set a "From" name and email address as well as a "Reply To" name and email address; the addition of an advanced Rich Text Editor to create HTML based emails and to save content templates; the ability to send emails by Directory category/security level; and the ability to send a link to a document as opposed to adding the document as an attachment;

— features from AV's Site Search functionality including the ability to search all content within a Website; the ability to target specific areas through Advanced Search; the ability to search documents; and the ability to search the content of documents;

— the "AV Plus" functionality allowing use of a horizontal multi-level menu that can be configured and completely managed solely by the Site Administrator; features allowing new modules to be added and security set to each menu item; and features allowing for multiple instances of modules such as the Calendar and Facility/Resource Reservations;

— features from AV's Member Home Page;

— features from AV's FormBuilder functionality, including "Smart Fields" that "auto fill" member information based on their account; the ability to accept payments including credit cards on forms; the ability to create template forms; the ability to include a custom confirmation message for submitted forms to residents; and the ability to download/export submitted form information;

— features from AV's FormTracker, including the ability to view form submissions by form type/category; the ability to link submitted forms to AV's FormTracker allowing for setting of status/disposition by submitted form; and the ability for a resident to view history of all online forms submitted;

— features from AV's Calendar, including a listing of upcoming events and weekly views, and inclusion of event end dates on all views;

— features from AV's Membership Directory capabilities, including read-only capability for directory listings, default Directory Information display settings; the ability to prevent Website information from being overwritten from Directory Uploads; Data entry guidelines for directory information to ensure client database limitations are corrected and accurate information uploads for Directory; the ability to setup and use unlimited custom fields; the ability to load an image for a Directory listing; the ability to report on all changes to Directory listings; and the display of birthdays to show only month and day;

— features from AV's Search Engine Optimization capability allowing the Site Administrator to set its own meta tag information;

— the AV's advanced Rich Text Editor and addition to all modules for content editing;

— features from AV's Photo Gallery including the ability to view images within a slide-show viewer;

— AV's Neighborhood Search functionality, including the ability to select categories to locate on the map; the ability to search for a specific item by name or type; and AV's Automatic Site Map functionality;

— System wide features such as AV's user session expiration notices and timestamps modified to display local time zone.

43. Further, as the AHN Defendants have implemented their scheme, they have become even bolder in obtaining illegal access to AV's proprietary information. For example, in recent months the AHN Defendants caused Adams to falsely inform AV that Landings East was interested in serving as a "beta" (or test) customer for AV's new CRM functionality. Because there is no Landings East and, therefore, no *bona fide* reason for the Landings East to become a beta customer with respect to this additional functionality, the only purpose of AHN's request is to enable the AHN Defendants to obtain advance access to this new feature so that they could copy this functionality before it had even been released by AV to AV's own customer base.

## FIRST CLAIM FOR RELIEF
(Violation of Computer Fraud And Abuse Act — 18 U.S.C. §1030(a)(2)(C))

44. AV incorporates herein by reference the allegations set forth in paragraphs 1 to 43 of this Complaint.

45. The actions of the AHN Defendants have involved interstate communications, including phone calls from Georgia to Colorado, facsimiles from Georgia to Colorado, and e-mails from Georgia to Colorado.

46. The AV software and other electronic information at issue in this matter is stored on computers connected to the internet, which therefore constitute protected computers within the meaning of 18 U.S.C. §1030(e)(2)(B).

47. The AHN Defendants obtained access to AV's computers without authorization within the meaning of 18 U.S.C. §1030(a)(2)(C) because they obtained access to AV's computers by making the fraudulent representations described above. The AHN Defendants' fraud vitiates any consent granted pursuant to the Services Agreement.

48. Additionally, the AHN Defendants exceeded, within the meaning of 18 U.S.C. §1030(a)(2)(C), any authorized access to AV's computers they may claim to have had because, to the extent the AHN Defendants ever had valid authorized access — which AV denies, because the AHN Defendants' access was obtained through fraudulent means — the AHN Defendants exceeded the scope of any such valid authorized access by violating the terms of the Services Agreement in the manner described above.

49. The AHN Defendants obtained information from a protected computer by unauthorized access and by actions exceeding the scope of any valid authorized access, as described above, in the form of the confidential proprietary information described above.

50. AV suffered losses within a calendar year in excess of $5,000 as a result of the AHN Defendants' unauthorized access to AV's protected computers, including without limitation the cost of investigating these violations and the cost of assessing the damages caused by the AHN Defendants' violations.

51.     Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.  Additionally, AV requests that this Court grant AV all other relief to which AV is entitled pursuant to 18 U.S.C. §1030(g), including recovery of all losses sustained as a result of AHN's actions, and recovery of all economic damages caused by the AHN Defendants' violations of the CFAA.

SECOND CLAIM FOR RELIEF
(Violation of Computer Fraud And Abuse Act — 18 U.S.C. §1030(a)(4))

52.     AV incorporates herein by reference the allegations set forth in paragraphs 1 to 51 of this Complaint.

53.     The actions of the AHN Defendants described above, in gaining unauthorized access to AV's computers and exceeding any access granted to them, were done knowingly and with the intent to defraud.

54.     The AHN Defendants obtained things of value through engaging in unauthorized access to AV's computers and exceeding any access validly granted in the form, *inter alia,* of obtaining unlawful access to AV's confidential proprietary information which the AHN

Defendants used to modify AHN's software to include features available only on AV's software and to then use those features to AHN's competitive advantage and AV's competitive disadvantage.

55. AV suffered losses within a calendar year in excess of $5,000 as a result of the AHN Defendants' unauthorized access to AV's protected computers, including without limitation the cost of investigating these violations and the cost of assessing damages caused by the AHN Defendants' violations.

56. Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features. Additionally, AV requests that this Court grant AV all other relief to which AV is entitled pursuant to 18 U.S.C. §1030(g), including recovery of all losses sustained as a result of AHN's actions, and recovery of all economic damages caused by the AHN Defendants' violations of the CFAA.

## THIRD CLAIM FOR RELIEF
### (Violation of Computer Fraud And Abuse Act — 18 U.S.C. §1030(b))

57.   AV incorporates herein by reference the allegations set forth in paragraphs 1 to 56 of this Complaint.

58.   J. Sanders, S. Sanders and Adams agreed upon the fraudulent scheme described above and, accordingly, engaged in a conspiracy to violate the Computer Fraud and Abuse Act, 18 U.S.C. §1030 (the "CFAA"), which conspiracy resulted in the violations of the CFAA set forth above.

59.   AV has suffered losses in excess of $5,000 as a result of the conspiracy to violate the CFAA, including without limitation the cost of investigating these violations and the cost of assessing damages caused by the AHN Defendants' violations.

60.   Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.  Additionally, AV requests that this Court grant AV all other relief to which AV is entitled pursuant to 18 U.S.C. §1030(g), including recovery of all losses sustained as a result of

AHN's actions, and recovery of all economic damages caused by the AHN Defendants' violations of the CFAA.

## FOURTH CLAIM FOR RELIEF
(Violation Of Copyright Act — 17 U.S.C. § 501)

61.  AV incorporates herein by reference the allegations set forth in paragraphs 1 to 60 of this Complaint.

62.  AV has copyrighted the source code for its Web-based software solution and has received a certificate of registration for that copyright, which constitutes *prima facie* evidence of the validity of the AV's copyright.

63.  AHN violated AV's copyright by copying portions of AV's source code without authority to do so, and also violated AV's copyright by taking the portions of AV's source code copied without authority and then translating that copied source code into its equivalent in the programming language used by AHN.

64.  J. Sanders, S. Sanders and Adams are contributorily liable for AHN's copyright infringement because they knowingly and materially participated in and assisted AHN's infringement by conceiving of and implementing the fraudulent scheme described above and were thereby the moving, active and conscious force behind AHN's infringement.

65.  Pursuant to 17 U.S.C. §504, AV is entitled to recover statutory damages or, in the alternative, actual damages based on the AHN Defendants' copyright infringement in an amount equal to the losses AV suffered as a result of that infringement (including any diminution in the value of AV's copyrighted software caused by the AHN Defendants' infringement), plus

any profits earned by the AHN Defendants that are attributable to the infringement and that are not taken into account in determining AV's actual damages, plus attorney's fees and costs.

66. Additionally, because the infringing conduct was willful, in that it was done with knowledge that the actions at issue violated the AV's copyright, the AHN Defendants are further liable for all damages available in case of willful copyright infringement.

67. Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.

FIFTH CLAIM FOR RELIEF
(Civil Conspiracy)

68. AV incorporates herein by reference the allegations set forth in paragraphs 1 to 67 of this Complaint.

69. J. Sanders, S. Sanders and Adams entered into an agreement to obtain access to AV's confidential proprietary software through the fraudulent scheme set forth above, including an agreement to obtain such improper access through breaching the terms of the Services

Agreement purportedly signed by Landings East and by otherwise employing the illegal means described above.

70. The actions of J. Sanders, S. Sanders and Adams caused damages to AV.

71. The actions of J. Sanders, S. Sanders and Adams were taken in the course and scope of their employment by AHN. Accordingly, not only are J. Sanders, S. Sanders and Adams jointly and severally liable for all damages caused by their conduct, but AHN is vicariously liable for all such damages.

72. Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.

<u>SIXTH CLAIM FOR RELIEF</u>
(Fraud and Aiding and Abetting Fraud)

73. AV incorporates herein by reference the allegations set forth in paragraphs 1 to 72 of this Complaint.

74.     The actions of Adams described above constitute fraud, in that those actions involved Adams' knowingly making misrepresentations for the purpose of inducing action by AV, in that AV reasonably and justifiably relied on Adams' misrepresentations, and in that AV suffered damages as a result of its reasonable and justifiable reliance on Adams' misrepresentations.

75.     S. Sanders and J. Sanders aided and abetted the fraud perpetrated by Adams because they had actual knowledge that Adams was engaged in a scheme to defraud AV and, with such actual knowledge, they voluntarily and knowingly provided substantial assistance to Adams in perpetrating that fraudulent scheme.

76.     The actions of J. Sanders, S. Sanders and Adams were taken in the course and scope of their employment by AHN.  Accordingly, not only are J. Sanders, S. Sanders and Adams jointly and severally liable for all damages cause by their conduct, but AHN is vicariously liable for all such damages.

77.     Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated fea-

tures; and (e) requiring AHN to substitute therefore a software solution not containing those pi-

rated features.

SEVENTH CLAIM FOR RELIEF
(Misappropriation Of Business Value)

78.   AV incorporates herein by reference the allegations set forth in paragraphs 1

to 77 of this Complaint.

79.   AV spent significant time, money and skill developing the unique and dif-

ferentiating features of AV's Web-based software solution.

80.   Through the fraudulent scheme described above, J. Sanders, S. Sanders and

Adams misappropriated numerous unique and differentiating features of AV's Web-based soft-

ware solution, including at a minimum the features identified in ¶41 of this Complaint And Jury

Demand, and incorporated those features into AHN's software, thereby misappropriating AV's

business values.

81.   The actions of J. Sanders, S. Sanders and Adams were taken in the course

and scope of their employment by AHN.  Accordingly, not only are J. Sanders, S. Sanders and

Adams jointly and severally liable for all damages cause by their conduct, including all profits

obtained by any of them or by AHN, but AHN is also vicariously liable for all such damages

and/or profits.

82.   Accordingly, AV requests that this Court grant AV all injunctive relief to

which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction:

(a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellec-

tual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they

have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.

### EIGHTH CLAIM FOR RELIEF
(Colorado Uniform Trade Secrets Act)

83.   AV incorporates herein by reference the allegations set forth in paragraphs 1 to 82 of this Complaint.

84.   The confidential proprietary information obtained by AHN through the illegal scheme described above included trade secret information within the meaning of the Colorado Uniform Trade Secrets Act, in that it contained designs, processes, procedures and other information that was maintained as confidential and secret through the use of reasonable means, including preventing access to that information by all persons not selected by AV to have access to that information.

85.   The AHN Defendants, through misrepresentation as described above, through breaching the Services Agreement as described above, and through the other improper means described above, misappropriated AV's trade secrets.

86.   The AHN Defendants are jointly and severally liable for their misappropriation of AV's trade secrets, entitling AV to recover actual damages for loss caused by that misappropriation and for all amounts by which the AHN Defendants, or any of them, were unjustly

enriched through that misappropriation, to the extent such amounts are not taken into account in computing AV's actual loss.

87. Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.

NINTH CLAIM FOR RELIEF
(Breach of Contract)

88. AV incorporates herein by reference the allegations set forth in paragraphs 1 to 87 of this Complaint.

89. To the extent the Services Agreement purportedly signed by Landings East and used by the AHN Defendants as one of the principal instrumentalities of their fraud is a valid and enforceable contract, AHN is the real party in interest to, and is bound by the provisions of, that Services Agreement.

90. To the extent the Services Agreement purportedly signed by Landings East and used by the AHN Defendants as one of the principal instrumentalities of their fraud is a valid

and enforceable contract, AHN breached the terms of that agreement by, *inter alia,* violating Sections 4, 7 and 8 of that agreement.

91. To the extent the Services Agreement purportedly signed by Landings East and used by the AHN Defendants as one of the principal instrumentalities of their fraud is a valid and enforceable contract, AHN is liable to AV for all damages caused by its breach of the Services Agreement and pursuant to Sections 2 and 8 thereof, is liable to AV for all attorney's fees and costs incurred by AV in enforcing its rights under that agreement.

92. Accordingly, AV requests that this Court grant AV all injunctive relief to which AV is entitled pursuant to 18 U.S.C. §1030(g) including without limitation an injunction: (a) prohibiting the AHN Defendants from their continued unlawful exploitation of AV's intellectual property; (b) requiring the AHN Defendants to disgorge all AV intellectual property they have wrongfully appropriated through the use of their illegal scheme; (c) requiring the AHN Defendants to eliminate from AHN's software solution all enhancements obtained through this illegal scheme; and (d) requiring the AHN Defendants to inform their customers that AHN has provided them with a software solution having pirated features and identifying those pirated features; and (e) requiring AHN to substitute therefore a software solution not containing those pirated features.

WHEREFORE, AV requests the injunctive and compensatory relief set forth above, plus all other relief to which it is entitled, including attorney's fees and costs. AV further demands a trial by jury on all claims so triable.

Dated:     January 19, 2010
           Denver, Colorado

Respectfully submitted,

HOROWITZ/FORBES, LLP

*s/Peter C. Forbes*

By:_____

    Jay S. Horowitz
    Peter C. Forbes
    2940 Wells Fargo Center
    1700 Lincoln Street
    Denver, Colorado 80203
    303 572-5100 (telephone)
    303 572-5111 (facsimile)
    jhorowitz@hflitig.com
    pforbes@hflitig.com

KAMLET REICHERT, LLP

    E. Lee Reichert
    Eric Gunning
    1515 Arapahoe Street
    Tower 1, Suite 1600
    Denver, CO 80202
    303 825-4200 (telephone)
    303 825-1185 (facsimile)
    lreichert@kamletlaw.com
    egunning@kamletlaw.com

Attorneys for Plaintiff AssociationVoice, Inc.

<u>Address of Plaintiff</u>:

400 S. Colorado Boulevard, Suite 790
Denver, CO 80246